UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MR. COOPER GROUP INC., AS
SUCCESSOR IN INTEREST TO HOME
POINT FINANCIAL CORPORATION,

             Plaintiff,

v.

AHL FUNDING,

             Defendant.

Case No. 4:23-cv-11108-SDK-APP

Hon. Victoria A. Roberts

Mag. Judge Anthony P. Patti

---

| | |
|---|---|
| Erik Johnson (P85017) | Thomas M. Schehr (P54391) |
| **PLUNKETT COONEY** | Mark J. Makoski (P81243) |
| *Attorneys for Plaintiff* | **DYKEMA GOSSETT PLLC** |
| 38505 Woodward Ave, Ste 100 | *Attorneys for Defendant* |
| Bloomfield Hills, MI  48304 | 400 Renaissance Center |
| (248) 433-2311 | Detroit, MI  48243 |
| | (313) 568-6800 |
| Neal Bailen | tschehr@dykema.com |
| Corey J. Dunn | mmakoski@dykema.com |
| **STITES & HARBISON PLLC** | |
| *Attorneys for Plaintiff* | |
| 323 East Court Avenue | |
| Jeffersonville, IN 47130 | |
| (812) 282-7566 | |
| nbailen@stites.com | |
| cdunn@stites.com | |

*(vertical text in left margin: DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243)*

---

## ANSWER TO FIRST AMENDED COMPLAINT

Defendant AHL Funding ("AHL") answers Plaintiff's First Amended

Complaint as follows:

## PARTIES

1.      Mr. Cooper Group is a Delaware corporation, with its principal place of business in Dallas, Texas. Mr. Cooper Group acquired Home Point Capital Inc., which was the parent company of Home Point Financial Corporation. Mr. Cooper Group is the successor in interest to Home Point Financial Corporation ("Homepoint").

**ANSWER:  AHL admits Mr. Cooper Group is a Delaware corporation with its principal place of business in Dallas, Texas. AHL lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations.**

2.      AHL is a California corporation, with its principal place of business in Irvine, California.

**ANSWER:   Admitted.**

3.      At times relevant to this Complaint, Homepoint was in the business of, among other things, purchasing and reselling residential mortgage loans on the secondary mortgage market.

**ANSWER: Admitted.**

4.      At times relevant to this Complaint, AHL was engaged in the business of originating, processing applications for, and preparing and arranging the closing and funding of residential mortgage loans.

2

**ANSWER:  Admitted.**

5.    On April 26, 2019, Homepoint and AHL entered into a contract entitled "Correspondent Mortgage Loan Purchase Agreement" ("Correspondent Agreement"), a true and correct copy of which is attached as Exhibit A and incorporated herein by reference.

**ANSWER:  The Correspondent Agreement is a document that speaks for itself. AHL denies any allegations to the extent they are inconsistent with the Correspondent Agreement.**

6.    As Homepoint's successor in interest, Mr. Cooper Group is entitled to enforce the Correspondent Agreement.

**ANSWER:  AHL lacks knowledge or information sufficient to form a belief as to the truth of the allegation.**

## JURISDICTION AND VENUE

7.    Section 21 of the Correspondent Agreement provides in pertinent part that the parties "agree that any litigation arising out of or relating hereto or the transactions and activities contemplated hereby shall be submitted or be brought in Michigan. The Parties hereto agree to submit to the venue and jurisdiction of the federal and state courts located therein."

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

**ANSWER:  The Correspondent Agreement is a document that speaks for itself. AHL denies any allegations to the extent they are inconsistent with the Correspondent Agreement.**

8.    This Court has jurisdiction over AHL because it has irrevocably submitted to the jurisdiction in the Correspondent Agreement. Additionally, this Court has jurisdiction over AHL because it transacted business with Homepoint in the State of Michigan.

**ANSWER:  The Correspondent Agreement is a document that speaks for itself. AHL denies any allegations to the extent they are inconsistent with the Correspondent Agreement.  AHL admits that it has transacted business with Homepoint in Michigan.**

9.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Mr. Cooper Group and AHL are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**ANSWER:  Admitted.**

10.    Venue is proper in this Court pursuant to the terms of Correspondent Agreement.

**ANSWER:  Admitted.**

## STATEMENT OF FACTS

**I.    The terms of the Correspondent Agreement**

4

11.     The Correspondent Agreement provides that Homepoint "has, from time to time, published and updated its Guidelines and Correspondent Seller Guide for correspondent lending which set forth additional representations, covenants, warranties and rights of the Parties and the contents of those are specifically incorporated in this Agreement." Ex. A at 1.

**<u>ANSWER</u>:  The Correspondent Agreement is a document that speaks for itself. AHL denies any allegations to the extent they are inconsistent with the Correspondent Agreement.**

12.     Section 7 of the Correspondent Agreement provides, in pertinent part:

[AHL] unequivocally and unconditionally represents and warrants to Purchaser and agrees as follows as of the date of this Agreement. These representations, warranties and agreements shall remain binding upon [AHL] during the term of this Agreement:

. . .

B.      All Loan Packages and Closed Loans have been "originated," which is defined for purposes of this Agreement to mean conduct of the initial borrower interview and the obtaining of a completed Form 1003 Uniform Residential Loan Application by employees of [AHL] licensed with the Nationwide Mortgage Licensing System ("NMLS") to originate residential mortgage loans for the appropriate state at the time the interview is conducted. [AHL] further represents and warrants that each Loan Package or Closed Loan sold to [Homepoint] meets the applicable underwriting and other product eligibility requirements established by [Homepoint] for the Loans.

C.      On all Loan Packages and Closed Loans, [AHL] has complied with all provisions of the Seller Guide, the

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

Guidelines, the investor Guidelines, and all other covenants in this Agreement. [AHL] has made full, truthful and accurate disclosure to [Homepoint] of all facts, information and documentation pertaining to its submission of any Loan Package or Closed Loan and is unaware, does not know or suspect, or have constructive notice of adverse circumstances or issues which could impact the integrity, salability or the ability of the Loans to be securitized by any agency or investor or which may otherwise have any bearing on [Homepoint's] decision to acquire the Loan Package or Closed Loan.

D.   All defects, errors, deviations, variations, irregularities and discrepancies, both actual and perceived, on all Loan Packages and Closed Loans have been fully and thoroughly investigated, resolved, cured and remediated by [AHL] prior to submission to [Homepoint]. No conditions (including underwriting or closing conditions) or contingencies remain outstanding.

E.   The Loan Packages and Closed Loans submitted by [AHL] to [Homepoint] do not contain any material or clerical errors, omissions, misrepresentations, untrue statements, falsified or incomplete documents or exhibits, misleading explanations, negligence, identity theft, fraud, or evidence of illegal activity or similar misconduct by [AHL], its officers, agents and employees, the borrowers, seller, realtor, appraiser, title company, settlement/closing agent, home Inspector, builder or any other party Involved in the Loan. Any evidence or instance, actual or circumstantial, of the existence of any prohibited conduct on any Loan Package or Closed Loan, without regard to the time sequence of the date of discovery by [Homepoint], will result in the immediate issuance of a written repurchase demand, automatic termination of this Agreement and possible referral of any alleged civil or criminal misconduct to the appropriate authorities.

. . .

Q.   All Loans comply with all Investor Guidelines as defined above, and any other agency or Investor Guidelines, regulations, directives and programs, as applicable. The Closed Loans and Loan Packages are eligible for purchase

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

and/or the issuance of insurance by the applicable investor or agency, and if applicable, are eligible for securitization by GNMA.

. . .

X.      The Loan was underwritten by [AHL] in accordance with underwriting standards that are acceptable to Fannie Mae, Freddie Mac and GNMA, as applicable, and/or in accordance with [Homepoint's] guidelines in effect at the time the Loan was originated. Where applicable, the Loan was serviced in accordance with applicable Fannie Mae, Freddie Mac, FHA, VA, USDA and/or HUD requirements and industry standards. The Loan is saleable to Fannie Mae, Freddie Mac and GNMA, as applicable, on a non-recourse basis. The Note and Mortgage with respect to each Loan are on forms acceptable to Fannie Mae and Freddie Mac.

**ANSWER:  The Correspondent Agreement is a document that speaks for itself.  AHL denies any allegations to the extent they are inconsistent with the Correspondent Agreement.**

13.     Section 8 of the Correspondent Agreement provides, in pertinent part:

A.      <u>Indemnification</u>: [AHL] shall indemnify, defend, and hold harmless [Homepoint], its affiliates, directors, officers, agents, and employees, successors and/or assigns, from and against any and all damages, losses, liability, costs, actions, causes of action, judgments, claims, demands, regulatory agency or governmental proceedings or investigations, investor repurchase demands or sanctions, attorneys' fees, court costs or expenses both direct and indirect, arising out of or related to (I) [AHL's] breach of any representation, warranty or covenant set forth in this Agreement; (II) [AHL's] failure or omission to perform any obligation set forth in this Agreement; and (iii) any fraud (whether active fraud or fraudulent omission) or misrepresentation is found to exist in any Loan or any documents related to the Loan or utilized in any way during the origination process, in all actions brought by or involving third parties in which [Homepoint] has the right to be indemnified under this Paragraph, [Homepoint] shall have the complete and

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

exclusive right to determine the conduct and defense of such legal proceeding or investigation with such third party including, without limitation, the right to compromise, settle, defend or continue any such action.

**ANSWER:** **The Correspondent Agreement is a document that speaks for itself. AHL denies any allegations to the extent they are inconsistent with the Correspondent Agreement.**

14.     Section 10 of the Correspondent Agreement provides, in pertinent part:

A.     Repurchase Obligations, Notwithstanding any independent investigation or evaluation of a Loan by [Homepoint] prior to purchase, [Homepoint] may, in its sole and exclusive discretion, require [AHL] to repurchase any Loan:

   i.     That was underwritten by [AHL] and/or originated in violation of any term, condition, requirement or procedure contained in this Agreement, the Program Requirements or the Seller's Guide in effect as of the date that [Homepoint] purchased such Loan;

   ii.     That was underwritten by [AHL] and/or originated based on any materially inaccurate information or material misrepresentations made by a Borrower, or by [AHL], [AHL's] directors, officers, employees, agents, independent contractors and/or affiliates, or any other party providing information relating to said Loan;

        OR

   iv.     that must be repurchased from any secondary market investor (including but not limited to Fannie Mae, Freddie Mac, FHA, VA, HUD, GNMA or USDA) due to a breach by Correspondent of any representation, warranty or covenant contained in this Agreement or a failure by Correspondent to comply in all material respects with the applicable terms, conditions, requirements and procedures

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

included in the Program Requirements or Seller's Guide. . .

. . .

B.   Opportunity to Cure. [AHL] will, upon notification by [Homepoint], correct or cure the defect identified by [Homepoint] with regard to a Loan within the time prescribed by [Homepoint] to the full and complete satisfaction of [Homepoint]. If, after receiving such notice from [Homepoint], [AHL] is unable to correct or cure such defect within the prescribed time, [AHL] shall, at [Homepoint's] sole discretion, either (1) repurchase such defective Loan from [Homepoint] at the Repurchase Price, or (ii) agree to such other remedies (including but not limited to additional indemnification and/or refund of a portion of the Purchase Price) as [Homepoint] may deem appropriate. For this purpose, the "Repurchase Price" with regard to a defective Loan that is subject to repurchase under this section 10(b) means the sum of: (1) the unpaid principal balance of the Loan; (2) all accrued but unpaid interest due [Homepoint] the date of repurchase; (3) all expenses, including but not limited to reasonable attorneys' fees incurred by [Homepoint] in enforcing [AHL's] obligation to repurchase such Loan; (4) any servicing expenses relating to the Loan, including any servicing advances made by [Homepoint] as servicer; and (5) any premiums paid to [AHL] for purchase of the Loan. If [Homepoint] requests a repurchase of a defective Loan, [AHL] shall, within ten business days of [AHL's] receipt of such repurchase request, pay to [Homepoint] the Repurchase Price by cashier's check or wire transfer of immediately available funds.

**ANSWER:** **The Correspondent Agreement is a document that speaks for itself. AHL denies any allegations to the extent they are inconsistent with the Correspondent Agreement.**

15.   Section 19 of the Correspondent Agreement provides, in pertinent part:

Equitable Relief. The remedies for a breach of the [AHL]'s representations, warranties and covenants are unlimited both in law and equity at the sole and absolute discretion of [Homepoint],

which may include, but is not limited to, injunctive relief on an ex parte basis to preserve [Homepoint's] interests. [AHL] agrees that a breach of this Agreement shall result in irreparable harm to [Homepoint].

**ANSWER:  The Correspondent Agreement is a document that speaks for itself.**

**AHL denies any allegations to the extent they are inconsistent with the**

**Correspondent Agreement.**

16.     Section 26 of the Correspondent Agreement provides, in pertinent part:

Attorneys' Fees and Costs. [AHL] acknowledges that [Homepoint] shall be entitled to recover all its reasonable attorneys' fees in the event that [AHL] breaches and Representation or Warranty set forth herein,[Homepoint] is otherwise required to repurchase any Loan pursuant to Section 10 hereof, and/or (c) [Homepoint] is required to commence litigation to enforce any provision of this Agreement (in which event, [Homepoint] shall also be entitled to recover court costs).

**ANSWER:  The Correspondent Agreement is a document that speaks for itself.**

**AHL denies any allegations to the extent they are inconsistent with the**

**Correspondent Agreement.**

**II.    Homepoint purchased loans from AHL under the Correspondent Agreement.**

17.     On or about August 4, 2021, Homepoint purchased a mortgage loan concerning a property located at 48435 Indian Trails Road, Aguanga, CA 92536, and identified as Homepoint Loan Number xxxxxx6517 ("Loan 1"), from AHL under the Correspondent Agreement.

**ANSWER:  Admitted.**

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

18.     On or about March 22, 2022, Homepoint purchased a mortgage loan concerning a property located at 25563 Date St., San Bernadino, CA 92404, and identified as Homepoint Loan Number xxxxxx9513 ("Loan 2"), from AHL under the Correspondent Agreement.

**ANSWER:  Admitted.**

19.     On or about April 21, 2022, Homepoint purchased a mortgage loan concerning 3428 Sterling Drive, Corona, CA 92882, and identified as Homepoint Loan Number xxxxxx9644 (the "Loan 3") from AHL under the Correspondent Agreement.

**ANSWER:  Admitted.**

**III.     AHL breached the terms of the Correspondent Agreement by failing to repurchase Loan 1.**

20.     After Homepoint purchased Loan 1 from AHL, it was discovered Loan 1 was in violation of the guidelines, standards and requirements referenced in the Correspondent Agreement because material errors, omissions, misrepresentations, untrue statements, falsified and/or incomplete documents, and/or fraud existed regarding the borrowers' income. It was also discovered Loan 1's appraisal was inaccurate, misleading and/or improperly supported (the "Loan 1 Defects").

**ANSWER: Denied.**

11

21.     As a result of the Loan 1 Defects, Homepoint was forced to repurchase Loan 1 from Federal National Mortgage Association ("Fannie Mae") on or about November 16, 2022, because Loan 1 was not in conformity with the applicable guidelines, standards and requirements set forth and referenced in the Correspondent Agreement.

**ANSWER:  AHL denies that it breached the Correspondent Agreement.  AHL lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations.**

22.     Homepoint sent notice of the Loan 1 Defects to AHL and demanded AHL cure the defects or repurchase Loan 1 as required under the terms of the Correspondent Agreement.

**ANSWER: AHL admits that it received a demand letter.  Answering further, the Correspondent Agreement is a document that speaks for itself.  AHL denies any allegations to the extent they are inconsistent with the Correspondent Agreement.  AHL denies that Homepoint has a right to demand repurchase because AHL denies breaching the Correspondent Agreement.**

23.     Despite Homepoint's notice and demand, AHL failed to cure the Loan 1 Defects or repurchase Loan 1 as required under the terms of the Correspondent Agreement.

**ANSWER: AHL denies breaching the Correspondent Agreement and therefore has no obligation to cure any defects or repurchase the loan. AHL denies the remaining allegations.**

24.     As a result of its failure to cure the Loan 1 Defects or repurchase Loan 1, AHL has breached the Correspondent Agreement and caused damage to Mr. Cooper Group.

**ANSWER: Denied.**

25.     After AHL failed to repurchase Loan 1, Mr. Cooper Group sold Loan 1 for $358,285.02, but AHL still owes Mr. Cooper Group an amount of $140,832.45, inclusive of interest due at the time of sale and unreimbursed premiums.

**ANSWER: AHL lacks knowledge or information sufficient to form a belief as to the truth of the allegation regarding the sales price of Loan 1. AHL denies the remaining allegations.**

26.     Therefore, AHL's breach of the Correspondent Agreement relating to Loan 1 has resulted in total amounts due to Mr. Cooper Group in excess of $140,832.45, excluding interest, attorneys' fees, costs, and other amounts AHL owes to Mr. Cooper Group.

**ANSWER:  Denied.**

**IV.    AHL breached the terms of the Correspondent Agreement by failing to repurchase Loan 2.**

27.    After Homepoint purchased Loan 2 from AHL, it was discovered Loan 2 was in violation of the guidelines, standards and requirements referenced in the Correspondent Agreement because material errors, omissions, misrepresentations, untrue statements, falsified and/or incomplete documents, and/or fraud existed regarding the borrower's debt, income, and employment. It was also discovered the borrower did not hold title to the subject property for a period of at least six months prior to executing the promissory note (the "Loan 2 Defects").

**ANSWER:  Denied.**

28.    As a result of the Loan 2 Defects, Homepoint was forced to repurchase Loan 2 from Federal Home Loan Mortgage Corporation ("Freddie Mac") on or about October 14, 2022, because Loan 2 was not in conformity with the applicable guidelines, standards and requirements set forth and referenced in the Correspondent Agreement.

**ANSWER:  AHL denies that it breached the Correspondent Agreement.  AHL lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations.**

14

29.     Homepoint sent notice of the Loan 2 Defects to AHL and demanded AHL cure the defects or repurchase Loan 2 as required under the terms of the Correspondent Agreement.

**ANSWER:  AHL admits that it received a demand letter.  Answering further, the Correspondent Agreement is a document that speaks for itself.  AHL denies any allegations to the extent they are inconsistent with the Correspondent Agreement.  AHL denies that Homepoint has a right to demand repurchase because AHL denies breaching the Correspondent Agreement.**

30.     Despite Homepoint's notice and demand, AHL failed to cure the Loan 2 Defects or repurchase Loan 2 as required under the terms of the Correspondent Agreement.

**ANSWER: AHL denies breaching the Correspondent Agreement and therefore has no obligation to cure any defects or repurchase the loan.  AHL denies the remaining allegations.**

31.     As a result of its failure to cure the Loan 2 Defects or repurchase Loan 2, AHL has breached the Correspondent Agreement and caused damage to Mr. Cooper Group.

**ANSWER:  Denied.**

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

32.     After AHL failed to repurchase Loan 2, Mr. Cooper Group sold Loan 2 for $192,863.43, but AHL still owes Mr. Cooper Group an amount of $59,263.95, inclusive of interest due at the time of sale and unreimbursed premiums.

**ANSWER:  AHL lacks knowledge or information sufficient to form a belief as to the truth of the allegation regarding the sales price of Loan 2.  AHL denies the remaining allegations.**

33.     Therefore, AHL's breach of the Correspondent Agreement relating to Loan 2 has resulted in total amounts due to Mr. Cooper Group in excess of $59,263.95, excluding interest, attorneys' fees, and other amounts AHL owes to Mr. Cooper Group.

**ANSWER:  Denied.**

**V.     AHL is obligated to repurchase Loan 3 under the terms of the Correspondent Agreement.**

34.     Freddie Mac demanded repurchase of Loan 3 because Loan 3 was in violation of the guidelines, standards and requirements referenced in the Correspondent Agreement due to material errors, omissions, misrepresentations, false statements, and falsified and/or incomplete documents regarding borrower's self-employment income and monthly obligations (the "Loan 3 Defects").

16

**ANSWER: AHL denies any defects in Loan 3.  AHL denies the remaining allegations.**

35.    On or about May 15, 2023, Homepoint repurchased Loan 3 from Freddie Mac.

**ANSWER: AHL lacks knowledge or information sufficient to form a belief as to the truth of the allegation.**

36.    Homepoint sent notice of its repurchase and demanded AHL repurchase Loan 3 as required under the terms of the Correspondent Agreement.

**ANSWER: AHL admits that it received a demand letter.  Answering further, the Correspondent Agreement is a document that speaks for itself.  AHL denies any allegations to the extent they are inconsistent with the Correspondent Agreement.  AHL denies that Homepoint has a right to demand repurchase because AHL denies breaching the Correspondent Agreement.**

37.    Despite Homepoint's notice and demand, AHL has failed to repurchase Loan 3 as required under the terms of the Correspondent Agreement.

**ANSWER: AHL denies breaching the Correspondent Agreement and therefore has no obligation to cure any defects or repurchase the loan.  AHL denies the remaining allegations.**

38.    As a result of its failure to repurchase Loan 3, AHL has breached the Correspondent Agreement and caused damage to Mr. Cooper Group.

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

**ANSWER:  Denied.**

39.     AHL's breach of the Correspondent Agreement relating to Loan 3 has resulted in total amounts due to Mr. Cooper Group in excess of $448,958.41, excluding interest, attorneys' fees, and other amounts AHL owes to Mr. Cooper Group.

**ANSWER:  Denied.**

## COUNT I: BREACH OF CONTRACT
### (LOAN 1)

40.     Mr. Cooper Group incorporates the allegations contained in Paragraphs 1 through 39 of this Complaint as if set forth fully herein.

**ANSWER:  AHL incorporates all prior paragraphs.**

41.     As set forth in greater detail above, AHL was contractually obligated to repurchase any loan sold under the Correspondent Agreement which Homepoint was forced to repurchase from a secondary market investor or which is otherwise not in conformity with the applicable guidelines, standards and requirements set forth and referenced in the Correspondent Agreement.

**ANSWER:  The Correspondent Agreement is a document that speaks for itself and AHL denies breaching the Correspondent Agreement.**

DYKEMA GOSSETT PLLC • 400 Renaissance Centre, Detroit, Michigan 48243

42.     Homepoint was obligated to repurchase Loan 1 from Fannie Mae because the loan did not conform to the applicable guidelines, standards and requirements.

**ANSWER: AHL denies breaching the Correspondent Agreement and therefore has no obligation to repurchase the loan.**

43.     Homepoint sent all required notices and satisfied all conditions precedent to AHL's performance under the Correspondent Agreement.

**ANSWER: Denied.**

44.     Mr. Cooper Group, as the successor in interest to Homepoint, is entitled to enforce the Correspondent Agreement.

**ANSWER: AHL lacks knowledge or information sufficient to form a belief as to the truth of the allegation.**

45.     AHL breached the Correspondent Agreement when it failed to deliver Loan 1 in conformity with the applicable guidelines, standards and requirements set forth and referenced in the Correspondent Agreement and subsequently refused to cure the Loan 1 Defects or repurchase Loan 1.

**ANSWER: Denied.**

46.     After AHL failed to repurchase Loan 1, Mr. Cooper Group sold Loan 1 for $358,285.02, but AHL still owes Mr. Cooper Group an amount of

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

$140,832.45, inclusive of interest due at the time of sale and unreimbursed premiums.

**ANSWER:** **Denied.**

47.     AHL's breach of the Correspondent Agreement with respect to Loan 1 has caused Mr. Cooper Group to incur damages in excess of $140,832.45, excluding interest, attorneys' fees, costs, and other amounts AHL owes to Mr. Cooper Group.

**ANSWER:** **Denied.**

48.     Pursuant to the terms of the Correspondent Agreement, Mr. Cooper Group is entitled to recover its damages, reasonable attorneys' fees, expenses, and costs arising from AHL's breach of the Correspondent Agreement.

**ANSWER:** **Denied.**

49.     Pursuant to the terms of the Correspondent Agreement, Mr. Cooper Group is also entitled to indemnification from AHL, and to recover its other damages, including reasonable attorneys' fees, expenses, and costs arising from AHL's breaches of the Correspondent Agreement.

**ANSWER:** **Denied.**

<u>**COUNT II: BREACH OF CONTRACT**</u>
**(LOAN 2)**

50.     Mr. Cooper Group incorporates the allegations contained in Paragraphs 1 through 38 of this Complaint as if set forth fully herein.

<u>**ANSWER:**</u>  **AHL incorporates all prior paragraphs.**

51.     As set forth in greater detail above, AHL was contractually obligated to repurchase any loan sold under the Correspondent Agreement which Homepoint was forced to repurchase from a secondary market investor or which is otherwise not in conformity with the applicable guidelines, standards and requirements set forth and referenced in the Correspondent Agreement.

<u>**ANSWER:**</u>  **The Correspondent Agreement is a document that speaks for itself and AHL denies breaching the Correspondent Agreement.**

52.     Homepoint was obligated to repurchase Loan 2 from Freddie Mac because the loan did not conform to the applicable guidelines, standards and requirements.

<u>**ANSWER:**</u> **AHL denies breaching the Correspondent Agreement and therefore has no obligation to repurchase the loan.**

53.     Homepoint sent all required notices and satisfied all conditions precedent to AHL's performance under the Correspondent Agreement.

**ANSWER:  Denied.**

54.     Mr. Cooper Group, as the successor in interest to Homepoint, is entitled to enforce the Correspondent Agreement.

**ANSWER:  AHL lacks knowledge or information sufficient to form a belief as to the truth of the allegation.**

55.     AHL breached the Correspondent Agreement when it failed to deliver Loan 2 in conformity with the applicable guidelines, standards and requirements set forth and referenced in the Correspondent Agreement and subsequently refused to cure the Loan 2 Defects or repurchase Loan 2.

**ANSWER:  Denied.**

56.     After AHL failed to repurchase Loan 2, Mr. Cooper Group sold Loan 2 for $192,863.43, but AHL still owes Mr. Cooper Group an amount of $59,263.95, inclusive of interest due at the time of sale and unreimbursed premiums.

**ANSWER: Denied.**

57.     AHL's breach of the Correspondent Agreement with respect to Loan 2 has caused Mr. Cooper Group to incur damages in excess of $59,263.95, excluding interest, attorneys' fees, costs, and other amounts AHL owes to Mr. Cooper Group.

**ANSWER:** **Denied.**

58.     Pursuant to the terms of the Correspondent Agreement, Mr. Cooper Group is entitled to recover its damages, reasonable attorneys' fees, expenses, and costs arising from AHL's breach of the Correspondent Agreement.

**ANSWER:** **Denied.**

59.     Pursuant to the terms of the Correspondent Agreement, Mr. Cooper Group is also entitled to indemnification from AHL, and to recover its other damages, including reasonable attorneys' fees, expenses, and costs arising from AHL's breaches of the Correspondent Agreement.

**ANSWER:** **Denied.**

## COUNT III: BREACH OF CONTRACT
## (LOAN 3)

60.     Mr. Cooper Group incorporates the allegations contained in paragraphs 1 through 38 of this Complaint as if set forth fully herein.

**ANSWER:** **AHL incorporates all prior paragraphs.**

61.     AHL is contractually obligated to repurchase any loan sold under the Correspondent Agreement that Homepoint must repurchase from any secondary market investor or which is otherwise not in conformity with the applicable guidelines, standards and requirements set forth and referenced in the Correspondent Agreement.

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

23

**ANSWER: The Correspondent Agreement is a document that speaks for itself and AHL denies breaching the Correspondent Agreement.**

62.     Freddie Mac demanded Homepoint repurchase Loan 3 because Loan 3 did not conform to the applicable guidelines, standards and requirements under the Correspondent Agreement.

**ANSWER: AHL denies breaching the Correspondent Agreement and therefore has no obligation to repurchase the loan.**

63.     Homepoint was forced to repurchase Loan 3 from Freddie Mac, and despite Homepoint's notice and demand, AHL has failed to repurchase Loan 3 as required under the Correspondent Agreement.

**ANSWER: Denied.**

64.     Homepoint sent all required notices and satisfied all conditions precedent under the Correspondent Agreement.

**ANSWER: AHL lacks knowledge or information sufficient to form a belief as to the truth of the allegation.**

65.     Mr. Cooper Group, as the successor in interest to Homepoint, is entitled to enforce the Correspondent Agreement.

24

**ANSWER: AHL lacks knowledge or information sufficient to form a belief as to the truth of the allegation.**

66.     AHL breached the Correspondent Agreement when it failed to deliver Loan 3 in conformity with the applicable guidelines, standards and requirements set forth and referenced in the Correspondent Agreement and subsequently refused to repurchase Loan 3.

**ANSWER: Denied.**

67.     AHL's breach of the Correspondent Agreement with respect to Loan 3 has caused Mr. Cooper Group to incur damages in excess of $448,958.41, excluding interest, attorneys' fees, and other amounts AHL owes to Mr. Cooper Group.

**ANSWER: Denied.**

68.     Pursuant to the terms of the Correspondent Agreement, Mr. Cooper Group is entitled to recover its damages, reasonable attorneys' fees, expenses, and costs arising from AHL's breach of the Correspondent Agreement.

**ANSWER: Denied.**

69.     Pursuant to the terms of the Correspondent Agreement, Mr. Cooper Group is also entitled to indemnification from AHL, and to recover its other

DYKEMA GOSSETT PLLC • 400 Renaissance Center, Detroit, Michigan 48243

damages, including reasonable attorneys' fees, expenses, and costs arising from AHL's breach of the Correspondent Agreement.

**ANSWER: Denied.**

## AFFIRMATIVE DEFENSES

AHL sets forth its affirmative defenses as follows.

1.    Plaintiff has failed to state a claim on which relief can be granted.

2.    Plaintiff's claims are barred because it committed the first material breach of contract.

3.    Plaintiff's claims are barred because it failed to satisfy all conditions precedent.

4.    Plaintiff's claims are barred by estoppel.

5.    Plaintiff's claims are barred by its unclean hands.

6.    Plaintiff's claims are barred by waiver.

7.    Plaintiff has failed to mitigate its alleged damages.

AHL reserves the right to amend and supplement its affirmative defenses.

## RELIEF REQUESTED

Wherefore, AHL requests that the Court dismiss Plaintiff's First Amended Complaint with prejudice, and award AHL its costs, attorneys' fees, and other appropriate relief.

26

Respectfully submitted,

**DYKEMA GOSSETT PLLC**

By: */s/ Mark J. Makoski*
Thomas M. Schehr (P54391)
Mark J. Makoski (P81243)
400 Renaissance Center
Detroit, Michigan 48243
(313) 568-6800
tschehr@dykema.com
mmakoski@dykema.com

October 17, 2023                                      Attorneys for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 17, 2023, I electronically filed the foregoing paper with the Clerk of the Court using the Court's electronic filing system which will forward a copy via e-mail to all counsel of record.

**DYKEMA GOSSETT PLLC**

By: /s/ *Mark J. Makoski*
Mark J. Makoski (P81243)
400 Renaissance Center
Detroit, Michigan 48243
(313) 568-6800
mmakoski@dykema.com
Attorneys for Defendant

October 17, 2023